No. 70,590

STATE OF KANSAS, *Appellant*, v. PATRICK L. SCHERZER, *Appellee*.

(869 P.2d 729)

Opinion filed March 4, 1994.

*John K. Bork*, deputy attorney general, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellant.

*Jay H. Vader*, of Turner & Vader, Chtd., Kansas City, argued the cause, and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The defendant pled guilty to three counts of vehicular battery, K.S.A. 1992 Supp. 21-3405b, a class A misdemeanor. The defendant was fined $1,000 and sentenced to one year's imprisonment on each count, with the sentences to be served concurrently. The court ordered the defendant to serve 90 days of imprisonment by house arrest, to be followed by probation. The State appeals the court's order allowing the defendant to serve the 90 days of imprisonment by house arrest rather than imprisonment required by 21-3405b(b)(2). The two issues raised are: (1) Does house arrest constitute "imprisonment" under K.S.A. 1992 Supp. 21-3405b(b)(2), and (2) was the sentence imposed illegal?

Patrick Scherzer, a former county commissioner in Wyandotte County, was charged with two counts of DUI; one count of driving a vehicle on a divided highway in the wrong direction, and six counts of vehicular battery of six different victims resulting from a traffic accident that occurred on December 21, 1992. Pursuant to a plea bargain, Scherzer pled guilty to three counts of vehicular battery. The State dismissed the remainder of the charges.

Prior to pleading guilty, Scherzer had challenged the constitutionality of the vehicular battery statute penalty requirement that a person is not eligible for release on probation, suspension or reduction of sentence, or parole until that person has served at least 90 days' "imprisonment." To support his argument, Scherzer pointed out that aggravated vehicular homicide, K.S.A. 1992 Supp. 21-3405a, a class D felony, where a victim has died, expressly allows for house arrest or other residential confinement in lieu of imprisonment in the county jail, while vehicular battery, a class A misdemeanor, where the victim is not killed but injured, requires the defendant to serve 90 days' imprisonment without the option of house arrest or other residential confinement. Scherzer claimed that the differences in penalties between the two statutes constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

At sentencing, Scherzer sought to serve the 90 days of imprisonment by house arrest, and he argued that K.S.A. 21-4603b, the statute defining house arrest, made house arrest synonymous

with imprisonment. The State, however, noted that the aggravated vehicular homicide statute specified house arrest could be imposed in lieu of imprisonment, while the vehicular battery statute required imprisonment. The State argued that Scherzer was not eligible for probation, house arrest, or work release until he had actually served 90 days' imprisonment in the county jail. The State claimed that the legislature intended to exclude house arrest as an option of imprisonment for the crime of vehicular battery. The State also argued that the statute is constitutional. The State requested that the judge impose a $1,000 fine and sentence the defendant to serve one year's incarceration in the county jail on each count.

The district court fined Scherzer $1,000 for each count and sentenced him to one year on each count, to be served concurrently. The district court then addressed Scherzer's claims that the penalty imposed by 21-3405b was unconstitutional. The court reviewed the two statutes and their penalty requirements, then noted that vehicular battery required imprisonment prior to imposing other sentencing options. The State argued that the reason the legislature set the different penalties was that vehicular homicide is a class D felony and the offender could receive a longer sentence than a person convicted of a class A misdemeanor (vehicular battery). The district judge acknowledged the State's argument but found that the legislature had merely overlooked the difference in the sentence requirements and stated it was "inconceivable . . . the legislature meant that if a person kills someone that they can be given house arrest but if they only injure someone they can't be given house arrest." The district judge found he would have to impose a harsher sentence for a misdemeanor than for a felony. He then applied *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), for the test of whether the constitutional prohibition against cruel and unusual punishment was violated. The judge reasoned that under such circumstances the penalty provision of 21-3405b offended the constitutional prohibition against cruel and unusual punishment and would be unconstitutional. The judge opined that by reading the vehicular battery statute as allowing the use of house arrest as imprisonment, the statute passed the test in *Freeman* and was constitutional.

The court granted Scherzer probation to begin after he had served 90 days of imprisonment by house arrest, to be monitored by the Wyandotte County Pre-trial Services. Scherzer was also allowed to spend up to 20 hours a week on work release, with any time spent on work release to be added to his house arrest so that he would still have served a full 90 days of house arrest.

The State subsequently filed its notice of appeal in the Court of Appeals. The notice stated that the sentence allowing the defendant to serve the 90 days by house arrest instead of imprisonment violated the requirement of 21-3405b(b)(2). The same day, the State filed in the district court a motion to stay execution of Scherzer's sentence. The State alleged that if the sentence was not stayed, the entire imprisonment portion of the sentence would be served before an appeal could be heard and the State would be left without a remedy if the sentence imposed by the district court was found to be illegal. This was the first time the State had claimed that the sentence imposed by the district court was illegal. The district court did not rule on the motion.

A flurry of appellate activity followed. The State filed a motion in the Court of Appeals to stay the execution of the sentence until the appeal had been resolved. Neither the notice of appeal nor the docketing statement filed in the Court of Appeals stated the basis of or which appellate court had jurisdiction to hear the State's appeal. On November 4, 1993, this court noted that the appeal had been filed in the wrong appellate court and ordered the case transferred under K.S.A. 20-3018(a) and (c). We then issued a show cause order requesting the State to establish the jurisdictional basis for the appeal. On November 24, 1993, this court issued an order staying execution of Scherzer's imprisonment by house arrest.

## JURISDICTION

The State characterizes its appeal as whether the sentence imposed by the district court is illegal. This court has previously accepted an appeal by the State alleging an illegal sentence, albeit without explaining the jurisdictional authority for our review of the sentence imposed. See *State v. Keeley*, 236 Kan. 555, 694 P.2d 442 (1985). We note this court has general statutory jurisdiction to correct, modify, vacate, or reverse any act, order, or

judgment of a district court in order to assure that any such act, order, or judgment is just, legal, and free of abuse. K.S.A. 1993 Supp. 60-2101(b). The court also has specific statutory jurisdiction to correct an illegal sentence at any time. K.S.A. 22-3504. We have jurisdiction to consider the State's appeal.

DOES HOUSE ARREST CONSTITUTE "IMPRISONMENT"?

Was the district judge correct in determining that the legislature had merely overlooked the difference in the penalty imposed for aggravated vehicular homicide and vehicular battery? Did the legislature intend "that if a person kills someone that they can be given house arrest but if they only injure someone they can't be given house arrest?"

A review of the legislative history of the vehicular battery statute supports the conclusion that imprisonment, under 21-3405b, was not intended to include house arrest.

The 1988 legislature, which authorized house arrest, L. 1988, ch. 115, § 7, also amended the aggravated vehicular homicide statute, L. 1988, ch. 47, § 3, and added the offense of vehicular battery, L. 1988, ch. 47, § 3, Ch. 47, § 1. The amendment to K.S.A. 1987 Supp. 21-3405a that allowed the mandatory imprisonment for aggravated vehicular homicide to be met by house arrest occurred in the same legislation that created 21-3405b, the vehicular battery offense, which does not mention house arrest as satisfying the mandatory term of imprisonment. L. 1988, ch. 47. The underlying bill was S.B. 111.

This bill began as a simple 15-line bill in the Senate Judiciary Committee that created the new crime of causing injury while driving under the influence of alcohol or drugs and made it a class E felony. The committee then amended the designation of the crime to vehicular battery and dropped the penalty to a class A misdemeanor. The committee of the whole in the Senate then split the offense into two degrees—the first, a class E felony, involved violations of K.S.A. 8-1567, and the other, vehicular battery in the second degree, a class A misdemeanor, applied if the violation was of K.S.A. 8-1568 or similar city or county laws. At the time the bill left the Senate, there was no requirement for a set period of imprisonment as part of the penalty.

The House Committee on Federal and State Affairs amended it and added the specific penalty provision of ineligibility for probation, suspension or reduction of sentence, or parole until at least 90 days' imprisonment had been served. On final action by the House, the bill was amended to also include a variety of other related statutory amendments, but the minimum incarceration requirement was struck. At that time, an amendment to make aggravated vehicular homicide, 21-3405a, a class E instead of a class D felony was also added.

The bill was further amended in conference committee. The conference report signed by the six members of the conference committee added back in the 90 days' minimum imprisonment and also included reference to house arrest as a permissible means of serving the 90 days' imprisonment. The conference committee report also added similar language to 21-3405a. The version of the conference committee report shown as being approved by a majority of the House matches the conference committee report. The version of the conference committee report shown as being approved by a majority of the Senate differs from the House journal version and the signed conference committee report in that the house arrest language is absent from the penalty provisions for the offenses of vehicular battery and aggravated vehicular homicide.

After both houses passed S.B. 111, it was engrossed, then enrolled and sent to the governor to be signed. The version that was engrossed and then enrolled does not include reference to house arrest for the offense of vehicular battery but does for aggravated vehicular homicide. The governor signed a version of the bill that did not match the conference committee version.

The legislature subsequently amended K.S.A. 21-3405b in 1990 and, in doing so, repealed the former version of 21-3405b. L. 1990, ch. 97, § 4. Nothing in the legislative history of H.B. 2880, which later became L. 1990, ch. 97, indicates the legislature believed that there was an error in engrossing the 1988 version of 21-3405b. The changes made in 1990 to K.S.A. 21-3405b were not substantive and did not affect the relevant penalty provision of the offense.

Scherzer claims that house arrest and work release are similar forms of imprisonment. Scherzer points out that Att'y Gen. Op.

No. 84-9, stated that a person on work release was "imprisoned" as required by K.S.A. 1983 Supp. 8-1567 (d) and (e).

On three other occasions, the Attorney General has issued similar opinions. See Att'y Gen. Op. Nos. 83-123, 92-2, and 93-20. Opinion 92-2, in part, states at p. 4:

"This office has previously opined that 'the term "imprisonment" includes not only actual incarceration in jail, but may refer to any situation in which the defendant's liberty is restrained and he or she is subject to additional sanctions should an escape be made.' "

Opinion 93-20 concludes at p. 3:

"[T]o satisfy the mandatory imprisonment requirements imposed by K.S.A. 8-1567, the individual must be in custody. . . . [C]onstant surveillance by law enforcement officials in a jail is not required . . . . The determining factor is the intent of the court and law enforcement officials to retain custody and control of the prisoner."

An opinion of an attorney general, while sometimes persuasive, is not binding on this court. *Greenwood v. Estes, Savings & Loan Commissioner*, 210 Kan. 655, 661, 504 P.2d 206 (1972).

In *State v. Martin*, 14 Kan. App. 2d 138, 783 P.2d 1316 (1989), *rev. denied* 246 Kan. 769 (1990), the same issue was raised as to whether the statutory requirement of imprisonment for at least 90 days for a third conviction of DUI could be satisfied by being placed in a work release program. The Court of Appeals noted work release was not specifically mentioned in the DUI penalty provision and the term of imprisonment was not defined. The Court of Appeals applied our rationale in *State v. Meredith*, 236 Kan. 866, 696 P.2d 403 (1985), that time spent in an alcohol treatment program when the individual is not in custody or control of law enforcement officials does not satisfy the imprisonment requirement and determined work release did not qualify as imprisonment. We agree with the *Martin* court's conclusion that work release is not imprisonment.

We note that the criminal code resulted from a massive revision undertaken in the 1960s, which was at least partly driven by a desire to eliminate inconsistencies in the existing crimes act. Kansas Judicial Council Special Bulletin: Criminal Code, p. 7 (April 1968). The sentencing article of the criminal code is to

"be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances,

needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provide by law." K.S.A. 21-4601.

The manifest purpose of the criminal code in general and the sentencing article in particular is to avoid inconsistencies and to allow individualized sentencing dispositions whenever practicable.

Vehicular battery, K.S.A. 1992 Supp. 21-3405b, is unintentionally causing bodily harm to another human being which is done while committing a violation of K.S.A. 8-1566, 8-1567, or 8-1568, or the ordinance of a city or resolution of a county which prohibits any of the acts prohibited by those statutes. The penalty provision of the offense states:

"(b) Vehicular battery is a class A misdemeanor for which the offender, if the crime is committed while committing a violation of K.S.A. 8-1567 and amendments thereto or the ordinance of a city or resolution of a county in this state which prohibits any acts prohibited by that statute shall:

(1) Be fined not less than $1,000;

(2) not be eligible for release on probation, suspension or reduction of sentence or parole until the person has served at least 90 days' imprisonment;

(3) be required, as a condition of any grant of probation, suspension or reduction of sentence, parole or other release, to enter into and successfully complete an alcohol and drug safety action program or a treatment program as provided in K.S.A. 8-1008 and amendments thereto, or both the education and treatment programs; and

(4) have driving privileges suspended, or suspended and restricted, as provided by K.S.A. 8-1014, and amendments thereto."

Class A misdemeanors are punishable by a jail term of up to one year. K.S.A. 1992 Supp. 21-4502(1)(a). K.S.A. 1992 Supp. 21-3405b(b)(2) was repealed in 1992 and incorporated into K.S.A. 21-3412, battery.

The interpretation of a statute is a question of law, and this court's standard of review is de novo. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993). Statutory construction involves the application of a hierarchy of rules. The initial inquiry into this question must begin with the text of the statute. The rule of statutory construction to which all other rules are sub-

ordinate is that the intent of the legislature controls, if the intent can be ascertained from the plain language of the statute. *Martindale v. Tenny*, 250 Kan. 621, 626, 829 P.2d 561 (1992). If the statute is "plain and unambiguous" this court must "give effect to the [expressed] intention of the legislature," 250 Kan. 621, Syl. ¶ 2, unless "'the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, [then] the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.' [Citation omitted.]" *Todd v. Kelly*, 251 Kan. 512, 516, 837 P.2d 381 (1992). When the text is unambiguous, there is no need to consult extrinsic materials, such as legislative history. "No legislative history or extrinsic evidence of how the act evolved is necessary or relevant where the act contains no unrelated or unworthy matters and is clear on its face." *State ex rel. Stephan v. Board of Lyon County Comm'rs*, 234 Kan. 732, 740, 676 P.2d 134 (1984).

The State argues that the ordinary meaning of imprisonment is to put someone in prison or jail. In essence, the State is asserting the provision for house arrest in K.S.A. 21-4603b is an alternative sentencing disposition to imprisonment, not an alternative form of imprisonment.

Webster's Third New International Dictionary 1137 (1986) defines imprison: "1: to put in prison: confine in jail 2: to limit, restrain, or confine as if by imprisoning." Black's Law Dictionary 757, (6th Ed.1990) defines imprisonment as "[t]he act of putting or confining a person in prison. The restraint of a person's personal liberty."

K.S.A. 1992 Supp. 21-3110, which defines words used in the criminal code, does not define imprisonment. The Kansas Criminal Code did not define the term imprisonment until the legislature included a definition of imprisonment, for the purposes of the sentencing guidelines act, in L. 1992, ch. 239, New § 3. That definition states: " 'Imprisonment' means imprisonment in a facility operated by the Kansas department of corrections." It should also be noted that in 1993, the legislature amended K.S.A. 8-1567 and added this definition of imprisonment for violations of city and county ordinances:

" 'Imprisonment' shall include any restrained environment in which the court and law enforcement agency intend to retain custody and control of a defendant and such environment has been approved by the board of county commissioners or the governing body of a city." L. 1993, ch. 291, § 270(2).

Scherzer does not challenge the State's definition of the term imprisonment. Instead, he asserts the fact the vehicular battery statute does not expressly prohibit house arrest as a form of imprisonment is more important than the fact it does not expressly provide for it. He points out that the house arrest statute, K.S.A. 21-4603b, does not preclude imposing house arrest for class A misdemeanors. He reasons house arrest is not probation, suspension of sentence, or parole, alternative sentencing dispositions defined in K.S.A. 1992 Supp. 21-4602, so, by a process of elimination, it must be an alternative form of imprisonment.

The legislature recognized the use of house arrest when it granted the court or the Secretary of Corrections the authority to implement a house arrest program for defendants or inmates sentenced by the court or in the custody of the Secretary of Corrections when it enacted K.S.A. 21-4603b in 1988. The statute prohibited defendants who had committed specific crimes or had been denied parole from being placed on house arrest. House arrest is defined by 21-4603b as an individualized program in which the freedom of an inmate is restricted within the community, home, or noninstitutional residential placement and specific sanctions are imposed and enforced. House arrest may include electronic monitoring or voice identification-encoder. House arrest sanctions may include, but are not limited to, rehabilitative restitution in money or in kind, curfew, revocation or suspension of the driver's license, community service, deprivation of nonessential activities or privileges, or other appropriate restraints on the inmate's liberty.

Although the legislature had not defined imprisonment prior to 1992, it had set out authorized dispositions for a person who had been found guilty of a crime. The following review of several sentencing statutes indicates that the legislature does not intend house arrest to be imprisonment.

K.S.A. 1992 Supp. 21-4603 states that whenever any person has been found guilty of a crime, the court may (1) commit the defendant to the custody of the Secretary of Corrections or, if

confinement is for a term less than one year, to jail for the term provided by law; (2) impose the fine applicable to the offense; (3) release the defendant on probation subject to such conditions as the court may deem appropriate, including orders requiring full or partial restitution. In felony cases, the court may include confinement in a county jail not to exceed 60 days, which need not be served consecutively, as a condition of probation; (4) suspend the imposition of the sentence subject to such conditions as the court may deem appropriate, including orders requiring full or partial restitution (in felony cases, the court may include confinement in a county jail not to exceed 60 days, which need not be served consecutively, as a condition of suspension of sentence); (5) assign the defendant to a community correctional services program subject to such conditions as the court may deem appropriate, including orders requiring full or partial restitution; (6) assign the defendant to a conservation camp; (7) assign the defendant to a house arrest program pursuant to K.S.A. 21-4603b; (8) order the defendant to attend and satisfactorily complete an alcohol or drug education or training program; or (9) impose any appropriate combination of the foregoing sentencing options.

K.S.A. 1992 Supp. 21-4603 allows the judge to impose any combination of dispositions set out in the statute. One choice is imprisonment and another choice is house arrest. From the plain reading of the statute, one can conclude that imprisonment and house arrest are different dispositions available to the judge.

Other statutes indicate that house arrest is a condition of probation. K.S.A. 1992 Supp. 21-4610 sets conditions for probation or suspended sentence. That statute provides the court with authority to impose or modify any general or specific conditions of probation, suspension of sentence, or assignment to a community correctional services program. The court is required to condition any order granting probation, suspension of sentence, or assignment to a community correctional services program on the defendant's obedience of the laws of the United States, the State of Kansas and the laws of any other jurisdiction to which the defendant may be subject. Subsection (3) allows the court to impose any conditions of probation, suspension of sentence, or assignment to a community correctional services program that the

court deems proper. One option is to participate in a house arrest program pursuant to K.S.A. 21-4603b.

K.S.A. 8-1567 specifically states a person convicted of driving while under the influence of alcohol or drugs or of driving with a blood alcohol concentration of .10 or more may be placed under house arrest only after serving a specified term of imprisonment:

"(e) On a second conviction of a violation of this section, a person shall be sentenced to not less than 90 days nor more than one year's imprisonment and fined not less than $500 nor more than $1,000. *The five days' imprisonment mandated by this subsection may be served in a work release program only after such person has served 48 consecutive hours' imprisonment,* provided such work release program requires such person to return to confinement at the end of each day in the work release program. . . .

"(f) On the third or a subsequent conviction of a violation of this section, a person shall be sentenced to not less than 90 days nor more than one year's imprisonment and fined not less than $1,000 nor more than $2,500. Except as provided in subsection (g), the person convicted shall not be eligible for release on probation, suspension or reduction of sentence or parole until the person has served at least 90 days' imprisonment. . . . *The 90 days' imprisonment mandated by this subsection may be served in a work release program only after such person has served 48 consecutive hours' imprisonment, provided such work release program requires such person to return to confinement at the end of each day in the work release program.*" (Emphasis added).

K.S.A. 1992 Supp. 21-3405b(b)(2) provides that a person convicted of vehicular battery is not eligible for release on probation, suspension or reduction of sentence, or parole until the person has served at least 90 days' imprisonment. In 21-3405a, aggravated vehicular homicide, the legislature modified imprisonment by stating it could be served either in the county jail, by house arrest, or by any other residential confinement. The legislature has used different language in two comparable statutes. The presumption is that the legislature made a conscious choice to use different language in the two statutes and intended a different type of sentence be imposed.

IS K.S.A. 1992 SUPP. 21-3405b UNCONSTITUTIONAL?

Having determined that the required minimum period of imprisonment in K.S.A. 1992 Supp. 21-3405b cannot be served by house arrest, we must address Scherzer's Eighth Amendment challenge to the statute. Cruel and unusual punishment, as pro-

hibited by the Eighth Amendment to the United States Constitution, involves punishment that shocks the conscience or "which seems inhumane or barbarous." *State v. Rouse*, 229 Kan. 600, 605, 629 P.2d 167 (1981). A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992).

In *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), Freeman attacked the constitutionality of K.S.A. 1977 Supp. 21-4618, which denied probation to any defendant who had been convicted of an Article 34 crime in which the defendant had used a firearm. Freeman had been convicted of second-degree murder, and because she used a firearm, the statutory penalty excluded probation as a sentencing disposition. She appealed, attacking the statute as cruel and unusual punishment. The *Freeman* court noted that in determining whether the length of a sentence offends the constitutional prohibition against cruel and unusual punishment, three analyses should be considered:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense."

The *Freeman* court, after comparing the statutory penalty for second-degree murder, applied the third prong, which compares the Kansas penalty with penalties from other jurisdictions, found the other jurisdictions' penalties were as great as if not greater than the Kansas penalty, and upheld the constitutionality of 21-4618. 223 Kan. at 367-68.

Of the three prongs of the analysis to determine whether punishment is cruel and unusual, only the second prong is raised by Scherzer. He claims that by comparing the punishment set out

in K.S.A. 1992 Supp. 21-3405b with punishments imposed in this jurisdiction for more serious offenses, there are found more serious crimes punished less severely than the offense in question, and therefore the challenged penalty is suspect.

The concern addressed in *Freeman* is disparity in the length of the sentence, not the place of serving the sentence. Cruel and unusual punishment involves punishment that shocks the conscience or "which seems inhumane or barbarous." The legislature is the branch of government entrusted with the power to set the punishment for a crime. *State v. Reed*, 248 Kan. 792, 798, 811 P.2d 1163 (1991). The fact the legislature chose to allow house arrest for aggravated vehicular homicide offenders, and not for vehicular battery offenders, does not rise to the level of cruel and unusual punishment.

### WAS THE SENTENCE IMPOSED ILLEGAL?

During oral argument, the State conceded Scherzer's sentence is illegal only if house arrest is not a form of imprisonment. We have defined an " 'illegal sentence' [as] either a sentence imposed by a court without jurisdiction; a sentence which does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence which is ambiguous with respect to the time and manner in which it is to be served." *State v. Ruff*, 252 Kan. 625, 628, 847 P.2d 1258 (1993). The jurisdiction of the court to impose the sentence or the ambiguity of the sentence is not at issue in this case. The sole challenge is whether this sentence does not conform to the statutory provisions.

K.S.A. 1992 Supp. 21-3405b requires 90 days' imprisonment be served prior to any suspension of sentence. The district court did not have the authority to allow Scherzer to serve 90 days' imprisonment by house arrest. The sentence imposed does not conform to the statutory provision and it is an illegal sentence. The matter is remanded to the district court for correction of the illegal sentence. As required by K.S.A. 22-3504, Scherzer is to be given full credit for the time spent under house arrest and ordered to serve the balance of the 90-day imprisonment in the county jail as required by 21-3405b.

Reversed and remanded for correction of the sentence.