(893 P.2d 280)
No. 71,881

SHANE L. PALETTA, *Appellant*, v. CITY OF TOPEKA, KANSAS, and THE HONORABLE JOSEPH COX, JUDGE OF THE TOPEKA MUNICIPAL COURT, *Appellees*.

Opinion filed April 7, 1995.

*Gary Stone*, legal intern, and *Michael Kaye*, supervising attorney, of Washburn Law Clinic, of Topeka, for the appellant.

*Tracy T. Diel*, assistant city attorney, for the appellees.

Before ELLIOTT, P.J., BRAZIL and LEWIS, JJ.

LEWIS, J.: Petitioner, Shane L. Paletta, filed a petition for a writ of habeas corpus. The trial court dismissed the petition as being without merit. This appeal followed.

Petitioner entered into a diversion agreement with the City of Topeka in 1986 in order to avoid being prosecuted for DUI. At the time he entered into the agreement, he was not represented by counsel, was not informed of his right to counsel, and did not waive his right to counsel. Petitioner apparently lived up to the terms of the diversion, and he was never prosecuted or imprisoned for the 1986 DUI charge.

In 1990, petitioner was again prosecuted for DUI. This appeal arises out of the 1990 prosecution. In that case, petitioner was represented by counsel and was convicted of DUI. He was fined and sentenced to five days in jail and placed on one year's supervised probation.

Petitioner appealed his 1990 conviction to the Shawnee County District Court. That court dismissed his appeal. The dismissal was appealed to this court, and we affirmed the decision of the trial

court. *City of Topeka v. Paletta,* No. 68,454, unpublished opinion filed March 12, 1993.

A series of remands placed petitioner back before the municipal court in 1993. In June 1993, he moved the municipal court to modify his 1990 sentence, and that motion was denied.

In November 1993, petitioner again asked the municipal court to modify the 1990 sentence. This time, the court did so, modifying the sentence to two days in jail, 10 days' house arrest, a fine of $500, and probation for one year. Petitioner did not take a direct appeal from the modified sentence.

In January 1993, petitioner filed the present action in the district court. That court issued an order staying execution of the municipal sentence originally given in 1990 and modified in 1993. It appears that stay remains in effect.

The petition for habeas corpus was submitted on stipulated facts and admitted documents. The trial court held that the municipal court sentence was legal and dismissed the petition. It is now March 1995, and the sentence imposed originally in 1990 and modified in 1993 has yet to be executed. Indeed, at this stage, the parties litigate whether the sentence imposed was legal.

Because this action was tried on stipulated facts and documents, we exercise de novo review. *Lightner v. Centennial Life Ins. Co.,* 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987).

## JURISDICTION

Appeals from a municipal court may be taken as provided by K.S.A. 1994 Supp. 22-3609 and K.S.A. 12-4602. Judgment of a municipal court is effective upon announcement, and the time for appeal commences upon announcement. *City of Lenexa v. Higgins,* 16 Kan. App. 2d 499, Syl. ¶¶ 1, 2, 825 P.2d 1152, *rev. denied* 250 Kan. 804 (1992). "No appeal shall be taken more than 10 days after the date of judgment appealed from." K.S.A. 1994 Supp. 22-3609(2).

In this case, the modified sentence was imposed on November 1, 1993. That sentence was not appealed. Instead, the habeas corpus action was filed on January 30, 1994.

A petition for habeas corpus is not a substitute for appeal in a criminal case. This rule applies to appeals from municipal court.

*In re Habeas Corpus Application of Gilchrist*, 238 Kan. 202, 205, 708 P.2d 977 (1985). Despite this general rule, habeas corpus remains an appropriate remedy where constitutional rights are at issue. Petitioner relies upon *Gilchrist* to confer jurisdiction on this court. In order to determine whether we have jurisdiction over this appeal, we must decide first whether petitioner's constitutional rights are at issue.

Petitioner contends the municipal court enhanced his sentence on the basis of the uncounseled 1986 diversion. Our Supreme Court has determined that an uncounseled diversion agreement cannot be used to enhance the sentence for a subsequent DUI conviction. *State v. Priest*, 239 Kan. 681, 685, 722 P.2d 576 (1986). "This insures that an individual's Sixth Amendment right to counsel is protected." 239 Kan. at 683.

The City argues that the municipal court imposed a lawful sentence and that the record does not affirmatively disclose that petitioner's sentence was enhanced or that he was treated as a second-time offender.

To determine whether petitioner's constitutional rights are at issue in this case, we must first determine whether the municipal court, in fact, enhanced his sentence or treated him as a second-time offender. If it did, then this case presents a constitutional issue, and we have jurisdiction to consider the merits of the appeal. If the court did not enhance his sentence, he will not be allowed to substitute a direct appeal with a habeas corpus petition.

As will be seen, we conclude that petitioner was sentenced as a second-time offender and that we have jurisdiction over this appeal.

## FIRST- OR SECOND-TIME OFFENDER

The question is whether petitioner was sentenced as a first- or second-time offender. He argues that his uncounseled 1986 diversion was used as a prior conviction to enhance his sentence and that he was sentenced as a second-time offender. The City argues that the sentence imposed was lawful. It contends that the sentence could have been imposed upon either a first- or second-time offender and that the diversion was not used to enhance petitioner's sentence.

The 1990 sentence clearly treated petitioner as a second-time offender. However, that sentence has been modified; it is past history and irrelevant. The only sentence which is relevant on this appeal is the sentence imposed in 1993 when the 1990 sentence was modified. The record of the 1993 modification does not affirmatively indicate that it was imposed upon petitioner as a second-time offender. Despite the fact that the court did not affirmatively say so, we can only conclude that the 1993 modification was given to petitioner as a second-time offender.

The telling detail is the sentence of defendant to 10 days' house arrest. This is the only term of the modified sentence that *could not* have been imposed on a first-time offender.

The standard traffic ordinance of Topeka, in effect in December 1990, mirrors K.S.A. 1989 Supp. 8-1567. The relevant portions of standard traffic ordinance No. 30 were as follows:

"(d) Upon a *first conviction* of a violation of this section, a person shall be sentenced to not less than 48 consecutive hours' nor more than six months' *imprisonment*, or in the court's discretion 100 hours of *public service*, and fined not less than $200 nor more than $500. The person convicted must serve at least 48 consecutive hours imprisonment or 100 hours of public service either before or as a condition of any grant of probation or suspension, reduction of sentence or parole. In addition, the court shall enter an order which requires that the person enroll in and successfully complete an alcohol and drug safety action education program or treatment program as provided in K.S.A. Supp. 8-1008 and amendments thereto, or both the education and treatment programs.

"(e) On a second conviction of a violation of this section, a person shall be sentenced to not less than 90 days' nor more than one year's imprisonment and fined not less than $500 nor more than $1,000. Except as provided in subsection (g), the person convicted must serve at least five consecutive days' imprisonment before the person is granted probation, suspension or reduction of sentence or parole or is otherwise released. As a condition of any grant of probation, suspension of sentence or parole or of any other release, the person shall be required to enter into and complete a treatment program for alcohol and drug abuse as provided in K.S.A. Supp. 8-1008 and amendments thereto.

. . . .

"(g) On a second or subsequent conviction of a violation of this section, the court may place the person convicted under a house arrest program to serve the remainder of the minimum sentence only after such person has served 48 hours' consecutive imprisonment.

. . . .

"(k) For the purpose of determining whether a conviction is a first, second, third or subsequent conviction in sentencing under this section:

(1) 'Conviction' includes being convicted of a violation of this section *or entering into a diversion agreement in lieu of further criminal proceedings* on a complaint alleging a violation of this section;

. . . .

(3) Only convictions occurring in the immediately preceding five years, including prior to the effective date of this act, shall be taken into account, but the court may consider other prior convictions in determining the sentence to be imposed within the limits provided for a first, second, third or subsequent offender, whichever is applicable." (Emphasis added.)

It is clear that a sentence of house arrest may *only* be imposed upon a second-time offender. The emphasized language of standard traffic ordinance No. 30(g) leaves room for no other conclusion. The ordinance only authorizes a sentence of house arrest on a second or subsequent conviction.

Petitioner argues that the sentence of 10 days' house arrest is an illegal sentence, citing *State v. Scherzer*, 254 Kan. 926, 869 P.2d 729 (1994). The issue in *Scherzer* was whether house arrest constituted imprisonment for purposes of the vehicular battery statute. Conviction of vehicular battery required a minimum sentence of 90 days' imprisonment before eligibility for release on probation, suspension, reduction of sentence, or parole.

In *Scherzer*, the trial court imposed a 90-day sentence but ordered the sentence to be served under house arrest. The State appealed the sentence, arguing that "house arrest" was not "imprisonment."

The Supreme Court held that house arrest was not "imprisonment." 254 Kan. at 936. The court stated that house arrest might be a condition of probation, a suspended sentence, or assignment to community corrections, but could not substitute for the minimum sentence of 90 days' imprisonment.

The City argues that house arrest is available to a convicted offender without regard to whether it is a first or second conviction. We do not agree.

The City makes the same argument that was made by the State in *Scherzer*. House arrest was exclusively a sentence option for the class D felony of aggravated vehicular homicide, pursuant to

K.S.A. 1992 Supp. 21-3405a, but not for the class A misdemeanor of vehicular battery. In this case, house arrest is exclusively a sentence option for a second-time DUI offender. The appellate courts have no choice but to apply the sentencing statutes as they have been written by the legislative bodies. The mere fact that some element of logic may be lacking does not justify a court in departing from the obvious intent of the legislative body.

In this case, standard traffic ordinance No. 30(d) provides two sentencing options available to the municipal court for first-time offenders: (1) 48 hours' to 6 months' *imprisonment* and a fine of $200 to $500 or (2) 100 hours' public service.

Under *Scherzer*, house arrest is not imprisonment and would not be a proper sentence under standard traffic ordinance No. 30(d) unless it were made a condition of probation, suspension, reduction of sentence, or parole.

Our construction of the journal entry of sentencing in this case leads us to conclude that the 10-day house arrest was not a condition of probation, suspension, reduction of sentence, or parole. The sentence of house arrest could be imposed only on a second-time offender, and that requires that we treat the 1993 modification as having been imposed on petitioner as a second-time offender by using his uncounseled 1986 diversion.

## MAY AN UNCOUNSELED DUI DIVERSION BE USED TO ENHANCE A SENTENCE FOR A SECOND DUI?

This issue requires us to revisit our Supreme Court's decision in *State v. Priest*, 239 Kan. 681. In doing so, we must clear away the confusion created on this issue by the United States Supreme Court.

In *State v. Oehm*, 9 Kan. App. 2d 399, 680 P.2d 309 (1984), we held that a prior uncounseled misdemeanor conviction could not be used to enhance a sentence in a subsequent DUI prosecution. *State v. Priest* simply extended the logic of *State v. Oehm* to include an uncounseled diversion agreement. *Priest* held that an uncounseled diversion agreement, where counsel was not waived, could not be used to enhance the sentence of a DUI offender. If *Oehm* and *Priest* remain the law of this State, then

we must vacate petitioner's sentence because it was imposed upon him as a second-time offender, a status he could reach only by considering his uncounseled 1986 diversion as a first conviction.

In this state, cases involving the right to counsel have been traditionally viewed as Sixth Amendment cases and have followed the precedent established by the Supreme Court of the United States. See, *e.g.*, *State ex rel. Stephan v. Smith*, 242 Kan. 336, 349-50, 747 P.2d 816 (1987); *In re Habeas Corpus Application of Gilchrist*, 238 Kan. at 206; *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985); *State v. Oehm*, 9 Kan. App. 2d at 401-03. For that reason, we begin by reviewing the pronouncements of the Supreme Court of the United States on this issue.

In *Scott v. Illinois*, 440 U.S. 367, 59 L. Ed. 2d 383, 99 S. Ct. 1158 (1979), the court held that where no sentence of imprisonment was imposed, a defendant charged with a misdemeanor had no constitutional right to counsel. This decision was consistent with the earlier decision of *Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). Under these decisions, a prior uncounseled conviction could be used to enhance a defendant's sentence on a subsequent conviction.

In 1980, the United States Supreme Court decided *Baldasar v. Illinois*, 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585 (1980). *Baldasar* was so fractured that there was *no majority opinion written*. Instead, there were three concurring opinions joined by five justices and a dissenting opinion joined by four justices. It has been a subject of considerable debate as to just what *Baldasar* stood for.

"In *Marks v. United States*, 430 U.S. 188, 51 L. Ed. 2d 260, 97 S. Ct. 990 (1977), we stated that '[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Id.*, at 193, 51 L. Ed. 2d 260, 97 S. Ct. 990, quoting *Gregg v. Georgia*, 428 U.S. 153, 169, n.15, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976). This test is more easily stated than applied to the various opinions supporting the result in *Baldasar*. A number of Courts of Appeals have decided that there is no lowest common denominator or 'narrowest grounds' that represents the Court's holding. See, *e.g.*, *United States v. Castro-Vega*, 945 F.2d 496, 499-500 (CA2 1991); *United States v. Eck-*

*ford,* 910 F.2d 216, 219, n.8 (CA5 1990); *Schindler v. Clerk of Circuit Court,* 715 F.2d 341, 345 (CA7 1983), *cert. denied,* 465 U.S. 1068, 79 L. Ed. 2d 745, 104 S. Ct. 1419 (1984). Another Court of Appeals has concluded that the holding in *Baldasar* is Justice Blackmun's rationale, *Santillanes v. United States Parole Comm'n,* 754 F.2d 887, 889 (CA10 1985); yet another has concluded that the 'consensus' of the *Baldasar* concurrences is roughly that expressed by Justice Marshall's concurring opinion. *United States v. Williams,* 891 F.2d 212, 214 (CA9 1989). State courts have similarly divided. The Sentencing Guidelines have also reflected uncertainty over *Baldasar.* We think it not useful to pursue the *Marks* inquiry to the utmost logical possibility when it has so obviously baffled and divided the lower courts which have considered it. This degree of confusion following a splintered decision such as *Baldasar* is itself a reason for reexamining that decision. *Payne v. Tennessee,* 501 U.S. 808, ____, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991); *Miller v. California,* 413 U.S. 15, 24-25, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973)." *Nichols v. United States,* 511 U.S. ____, 128 L. Ed. 2d 745, 753-54, 114 S. Ct. 1921 (1994).

Despite some confusion, *Baldasar* did overrule *Scott v. Illinois* and is widely considered to prohibit the use of the prior uncounseled conviction to enhance the penalty or the status of a later conviction.

The recent decision of *Nichols v. United States* overruled *Baldasar* and held that "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." 128 L. Ed. 2d at 755. *Nichols* returns the state of the law to the position it was in when *Scott v. Illinois* was decided.

The question we must decide is whether *State v. Oehm* and *State v. Priest* must be followed in light of the decision in *Nichols.*

The issue is purely one of constitutional law, and the question involves the Sixth Amendment right to counsel. There is no statutory requirement in this state mandating that a defendant have counsel to enter into a misdemeanor diversion agreement. K.S.A. 12-4414(c) provides only that "[i]n all cases, the defendant shall be present and shall have the right to be represented by counsel at the diversion conference with the city attorney." This statutory provision does not mandate that counsel be provided for a defendant nor void any diversion agreement entered into without counsel.

"This court is required to apply the law established by the decisions of our Supreme Court, absent some indication that the

court is departing from its previously expressed position." *Zion Lutheran Church v. Kansas Comm'n on Civil Rights*, 16 Kan. App. 2d 237, 242, 821 P.2d 334 (1991), *aff'd* 251 Kan. 206, 830 P.2d 536 (1992). This court will not rule contrary to recent holdings of our Supreme Court " 'unless a valid reason exists to believe the Supreme Court would reach a different result if it were to reconsider the issue.' " *Mercer v. Fritts*, 9 Kan. App. 2d 232, 235, 676 P.2d 150, *aff'd* 236 Kan. 73, 689 P.2d 774 (1984).

We have carefully considered our obligations as indicated by the authorities quoted above. We conclude that our Supreme Court would not adhere to *State v. Priest* or *State v. Oehm* if it were to reconsider the issue in light of *Nichols*. As we read *Priest*, it was a logical extension of our decision in *Oehm*. *Oehm* specifically held that a prior uncounseled misdemeanor conviction could not be used to enhance the sentence in a subsequent DUI conviction. In doing so, we considered *Argersinger v. Hamlin*, *Scott v. Illinois*, and *Baldasar v. Illinois*. We ultimately held that: "*Baldasar* requires us to hold defendant's sentence to 90 days' imprisonment was constitutionally impermissible." 9 Kan. App. 2d at 402.

*Oehm* was specifically decided on the authority of *Baldasar*, which has now been overruled. *Priest* simply extended the holding in *Oehm* to include an uncounseled diversion among those matters which could not be used to enhance sentence on a subsequent DUI conviction.

We conclude that both *Oehm* and *Priest* are based on the holding in *Baldasar*, which is no longer the law. We deal here with a Sixth Amendment right to counsel in which our courts have traditionally followed the precedent established by the United States Supreme Court. This leads us to hold that our Supreme Court would no longer follow *Priest* but would adopt the holding in *Nichols*.

We are joined in our decision by courts of other states which have reevaluated their decisions regarding the use of uncounseled misdemeanor convictions in light of the decision in *Nichols*.

The Supreme Court of West Virginia overruled a prior decision which relied on *Baldasar v. Illinois*. *State v. Hopkins*, 192 W. Va. ___, Syl. ¶ 3, 453 S.E.2d 317 (1994).

. The Virginia Court of Appeals held that a prior DUI conviction, valid because no imprisonment resulted, could be used to enhance the punishment for a second-time offender. *James v. Commonwealth*, 18 Va. App. 746, 749-51, 446 S.E.2d 900 (1994). The Virginia Court of Appeals held in another case that an uncounseled DUI conviction which did result in a prison sentence could not be used to enhance a subsequent DUI offense. *Griswold v. Commonwealth*, 19 Va. App. 477, 453 S.E.2d 287 (1995). *Griswold* held this even where the sentenced imposed was suspended. 19 Va. App. at 482.

The Mississippi Supreme Court found *Nichols* controlling on the issue of the use of uncounseled DUI convictions to enhance the penalty for subsequent DUI convictions. *Ghoston v. State*, 645 So. 2d 936, 938 (Miss. 1994).

The Nebraska Court of Appeals predicted that Nebraska's Supreme Court, in light of *Nichols*, would reverse its reliance on *Baldasar*. *LeGrand v. State*, 3 Neb. App. 300, 317, 527 N.W.2d 203 (1995).

We hold that based on *Nichols*, an uncounseled diversion may be used as a prior conviction to enhance sentencing in a subsequent conviction so long as no imprisonment was actually imposed on the uncounseled diversion. Under these circumstances, the Sixth Amendment right to counsel does not apply. We decline to follow *State v. Oehm* and *State v. Priest* for the reasons stated.

Affirmed.