No. 87,844

STATE OF KANSAS, *Appellant*, v. BRADLEY F. SCHUSTER, *Appellee*.

(46 P.3d 1140)

Opinion filed May 31, 2002.

*Thomas J. Drees*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general was with him on the brief for appellant.

*Kenneth L. Cole*, of Woelk & Cole, of Russell, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals, pursuant to K.S.A. 2001 Supp. 22-3602, from the district court's order granting Bradley Schuster's motion to dismiss the underage driving under influence (DUI) charge against him. The district court concluded that K.S.A. 8-1567a does not establish a criminal offense. The court transferred the case from the Court of Appeals. K.S.A. 20-3018(c).

On March 24, 2001, Bradley Schuster, who was less than 21 years of age, was ticketed for operating a vehicle with a breath alcohol content greater than .02 but less than .08. Arraignment time and place were stated on the complaint. Before the appearance date, Schuster, through counsel, entered a plea of not guilty in writing.

Later, Schuster filed a motion to dismiss the charge of underage DUI in violation of K.S.A. 8-1567a. Relying on Attorney General Opinion No. 97-69, he argued that the statute provides for administrative action by the Kansas Department of Revenue (Revenue) but does not establish a criminal offense. He further stated that "the Kansas Department of Revenue has already commenced and

concluded a proceeding pursuant to statute on this matter and the Administrative Judge has rendered her decision so that the State is collaterally estopped from relitigating the issue."

The district court agreed that K.S.A. 8-1567a does not create a criminal offense. The district court ordered that the charge of underage DUI against Schuster be dismissed.

K.S.A. 8-1567a(a) provides: "It shall be unlawful for any person less than 21 years of age to operate or attempt to operate a vehicle in this state with a breath or blood alcohol content of .02 or greater." When Schuster was ticketed in March 2001, subsection (f) of K.S.A. 2000 Supp. 8-1567a provided:

"If a person less than 21 years of age submits to a breath or blood alcohol test requested pursuant to K.S.A. 8-1001 or K.S.A. 8-2,142 and amendments thereto, and produces a test result of .02 or greater, but less than .08, the person's driving privileges shall be suspended for one year."

Subsection (h) of K.S.A. 8-1567a, which prohibits a first occurrence of underage breath or blood alcohol content between .02 and .08 from being considered for insurance purposes, refers to the administrative proceeding:

"Any determination under this section that a person less than 21 years of age had a test result of .02 or greater, but less than .08, and any resulting administrative action upon the person's driving privileges, upon the first occurrence of such test result and administrative action, shall not be considered by any insurance company in determining the rate charged for any automobile liability insurance policy or whether to cancel any such policy under the provisions of subsection (4)(a) of K.S.A. 40-277 and amendments thereto."

K.S.A. 8-1015(a) provides:

"When subsection (b)(1) of K.S.A. 8-1014, and amendments thereto, requires or authorizes the division to place restrictions on a person's driving privileges, the division shall restrict the person's driving privileges to driving only under the circumstances provided by subsections (a)(1), (2), (3) and (4) of K.S.A. 8-292 and amendments thereto."

K.S.A. 8-1014(b)(1) provides in part that "if a person fails a test . . ., the division shall . . . [o]n the person's first occurrence, suspend the person's driving privileges for 30 days, then restrict the person's driving privileges as provided by K.S.A. 8-1015, and amendments thereto, for an additional 330 days."

The sole question on appeal is whether K.S.A. 8-1567a establishes a criminal offense. The resolution of this issue raised by the State requires the construction and application of several statutes, which is a question of law over which our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan 875, 879, 953 P.2d 1027 (1998).

> "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

> "The rule of strict construction means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it." *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984).

In 1997, the Attorney General issued an opinion regarding enforcement of 8-1567a. The Attorney General concluded that it is not a criminal statute and that proceedings under it are civil rather than criminal in nature. Att'y Gen. Op. No. 97-69, p. 4. The Attorney General further concluded that courts do not have authority to suspend driving privileges under the statute: "[I]t is our opinion that the hearing contemplated by K.S.A. 1996 Supp. 8-1567a is an administrative hearing before the Division of Motor Vehicles rather than a judicial proceeding before a Court." Att'y Gen. Op. No. 97-69, p. 5.

The legislative history recounted in the Attorney General's opinion supports the conclusion that enforcement proceedings are civil and administrative. The opinion states:

> "The Kansas Legislature took up the issue of 'zero tolerance' in the 1996 Session in order to satisfy the federal requirement set forth in the National Highway System Designation Act, now codified at 23 U.S.C.A. § 161(a)(3). This federal statute requires each state to 'enact and enforce a law that considers an individual

under the age of 21 who has a blood alcohol concentration of 0.02 percent or greater while operating a motor vehicle in the State to be driving while intoxicated or driving under the influence of alcohol.' Failure to comply with this requirement results in the withholding of certain federal highway construction funds. 23 U.S.C.A. § 161(a)(1) and (2). As originally introduced, the bill seeking to bring the State into compliance with the 'zero tolerance' requirement amended K.S.A. 8-1567(a)(1) and (2) to make a blood or breath alcohol concentration of .02 in persons less than 21 years of age a violation of that statute subject to the criminal penalties of subsections (d), (e) and (f) of that statute. 1996 H.B. 2603, as introduced. However, the House Committee adopted an amendment intended to 'strike all criminal provisions in the bill and only have the administrative suspension apply.' Minutes, House Committee on Judiciary, February 22, 1996. The Senate Committee subsequently adopted a substitute bill based on concerns raised by the Kansas Department of Transportation that H.B. 2603, as amended by the House Committee, would not satisfy the federal law requirements. Minutes, Senate Committee on Judiciary, March 13, 1996; Journal of the Senate 1596, March 21, 1996. For our purposes, the main distinction between the two bills was that the Senate substitute contained a new section using the language '[i]t shall be unlawful' for any person less than 21 years of age to operate or attempt to operate a vehicle with a breath or blood alcohol content of .02 or greater. S. Sub. for H.B. 2603, § 1. However, there was no mention in the minutes that the Senate intended to reinsert any criminal sanctions for violation of the law, and the amendments to K.S.A. 8-1567 were not made a part of the Senate substitute bill. [While not available at the time K.S.A. 1996 Supp. 8-1567a was being debated, the federal regulations make clear that criminal sanctions are not required for compliance with the federal 'zero tolerance' requirement. 23 C.F.R. § 1210.4(c) (revised as of April 1, 1997).]" Att'y Gen. Op. No. 97-69, pp. 4-5.

The Court of Appeals in *Badgley v. Kansas Driver Control Bureau*, 27 Kan. App. 2d 557, Syl. ¶ 1, 7 P.3d 326, *rev. denied* 270 Kan. 897 (2000), started from the premise that the Kansas Department of Revenue, rather than the courts, is authorized to restrict driving privileges. The Court of Appeals stated that "[u]nder K.S.A. 1999 Supp. 8-1015, only the Kansas Department of Revenue is authorized to place restrictions on a person's driving privileges." 27 Kan. App. 2d 557, Syl. ¶ 1. The question was whether on an appeal of the administrative action the district court has jurisdiction to alter the restrictions. The Court of Appeals concluded that "[t]he district court does not have jurisdiction to modify the restrictions imposed on a person's driving privileges by the Kansas Department of Revenue under K.S.A. 1999 Supp. 8-1015." 27 Kan. App. 2d 557, Syl. ¶ 2.

In *Badgley*, the district court based its decision on the rationale of *Beckley v. Motor Vehicle Department*, 197 Kan. 289, 294, 416 P.2d 750 (1966). The Court of Appeals in *Badgley* quoted with approval the following from the district court's decision:

" 'In Beckley, the District Court found that a test refusal had occurred, but entered an order reducing the period of suspension to thirty (30) days as opposed to the ninety (90) day suspension imposed by the Department. The Supreme Court reversed, holding that the *legislature* intended that the Court be limited to a *judicial* determination of the factual basis upon which the action of the Department is predicated. The Supreme Court stated its rationale at page 294 as follows:

"If the courts were permitted to modify the suspension or revocation of a driver's license ordered by the motor vehicle department by either enlarging or reducing the period, the effectiveness of the administrative body will be destroyed. The administrative body would make initial recommendations to the Court, which would rehear the matter and finally determine the length of suspension or revocation. This could result in confusion, reduplication of effort, and inconsistent penalties administered over the state. The Motor Vehicle Department was initially set up for the purpose of avoiding such problems." ' (Emphasis added.)" 27 Kan. at 559.

*State v. Wick*, 28 Kan. App. 2d 888, 24 P.3d 158 (2001), was an interlocutory appeal by the State from the district court's order suppressing the results of Wick's blood alcohol test. Wick, who was under the age of 21, was charged with involuntary manslaughter while operating a vehicle with a blood alcohol concentration of .08 in violation of K.S.A. 1998 Supp. 21-3442. Wick was read an implied consent advisory, but the district court suppressed the test result on the ground that Wick was not read the implied consent advisory applicable to persons under the age of 21, as required by K.S.A. 1998 Supp. 8-1567a. The Court of Appeals reversed. It reasoned that 8-1567a, which proscribes underage breath or blood alcohol levels between .02 and .08, did not apply where Wick's blood alcohol level was .10. The Court of Appeals concluded that the DUI statutes not limited to drivers under 21 applied.

As to K.S.A. 1998 Supp. 8-1567a, the Court of Appeals stated:

"The statute's placement within the traffic code raises a reasonable argument that criminal penalties are to apply to a violation of the conduct prohibited therein. The statute was placed in the general proximity of K.S.A. 1998 Supp. 8-1567 which

clearly establishes criminal penalties for driving under the influence of alcohol, rather than with the civil penalties found in K.S.A. 1998 Supp. 8-1002.

"In contrast, *while the language of K.S.A. 1998 Supp. 8-1567a indicates criminal prohibition of the conduct specified therein, the penalties provided by the statute do not constitute criminal penalties but merely civil restrictions on driving privileges, evidencing the legislature's intent to provide only administrative penalties for violation of the statute.* See *State v. Mertz*, 258 Kan. 745, 758-61, 907 P.2d 847 (1995) (holding that suspension of a driver's license for driving under the influence of alcohol is a civil remedy designed to protect the public, not a criminal penalty designed to punish the driver).

"By promulgating a statutory provision to govern minor drivers who have consumed alcohol, we conclude, the legislature intended to maintain existing provisions and sanctions. The statute explicitly states this intent: 'Except where there is a conflict between this section and K.S.A. 8-1001 and 8-1002 and amendments thereto, the provisions of K.S.A. 8-1001 and 8-1002 and amendments thereto, shall be applicable to proceedings under this section.' K.S.A. 1998 Supp. 8-1567a (g).

"Logic dictates that K.S.A. 1998 Supp. 8-1567a was designed to cover conduct not previously covered in K.S.A. 1998 Supp. 8-1002 and K.S.A. 1998 Supp. 8-1567. The statute discusses only the penalties to be applied to persons under 21 years of age for breath or blood alcohol concentrations between .02 and .08, not the penalty to apply to persons whose breath or blood alcohol concentration exceeds .08. See K.S.A. 1998 Supp. 8-1567a (d), (e), (f), and (h)." (Emphasis added.) 27 Kan. App. 2d at 893-94.

The State argues that the legislature's intent to provide criminal penalties is shown by the placement of the statute between 8-1567 and 8-1568 and by the language, "[i]t shall be unlawful."

With regard to placement, the State suggests that had the legislature intended only civil penalties, it would have amended K S.A. 8-1002 or added an 8-1002a instead of adding 8-1567a. The legislature is not involved in the placement or numbering of statutes, and it is long established that "[t]he placement of a law in a particular location in the General Statutes by the compiler is not persuasive as to the intent of the legislature which enacted the statute." *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, Syl. ¶ 3, 610 P.2d 1107 (1980).

At oral argument, the State took a different tact to support its position. Arguing that by failing to designate the violation of K.S.A. 8-1567a as a felony or traffic violation, "it becomes a misdemeanor" by operation of K.S.A. 2001 Supp. 21-3105, and pursuant to K.S.A.

2001 Supp. 21-4502 has the same penalty as a class C misdemeanor. K.S.A. 2001 Supp. 21-3105 first defines a crime as "an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine, or both imprisonment and fine, is authorized or, in the case of a traffic infraction, . . . a fine is authorized." That is followed by classifying crimes as (1) a felony, (2) traffic infraction, (3) cigarette or tobacco infraction, and (4) "all other crimes are misdemeanors." According to the State, K.S.A. 2001 Supp. 21-3105 makes all crimes misdemeanors if not designated as a felony or traffic violation. Not only does the State add something not found in the statute, it ignores the definition of a crime in the first part of K.S.A. 2001 Supp. 21-3105. K.S.A. 8-1567a does not meet that definition, and thus it cannot be classified as a misdemeanor. K.S.A. 2001 Supp. 21-4502(d) provides:

"Unclassified misdemeanors, which shall include all crimes declared to be misdemeanors without specification as to class, the sentence for which shall be in accordance with the sentence specified in the statute that defines the crime; if no penalty is provided in such law, the sentence shall be the same penalty as provided herein for a class C misdemeanor."

This subsection is not applicable since K.S.A. 8-1567a is not a crime nor is it "declared to be a misdemeanor without specification as to class."

The Attorney General's opinion thoroughly and convincingly examines the reason for the "[i]t shall be unlawful" language in 8-1567a. The legislative history shows that the language was part of a Senate substitute bill for H.B. 2603, which was adopted by the Senate due to KDOT's concerns that the House bill would not satisfy federal requirements. Att'y Gen. Op. No. 97-69, p. 4. "However, there was no mention in the minutes that the Senate intended to reinsert any criminal sanctions for violation of the law, and the amendments to K.S.A. 8-1567 were not made a part of the Senate substitute bill." Att'y Gen. Op. No. 97-69, p. 5. K.S.A. 8-1567a does not establish a criminal offense, and the district court did not err in dismissing the underage DUI charge against Schuster.

The judgment of the district court is affirmed.