IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 121,789

STATE OF KANSAS,
*Appellant*,

v.

SIDNEY W. CLARK,
*Appellee.*

SYLLABUS BY THE COURT

1.

The right to appeal derives from statute. Therefore, as a general rule, appellate courts may exercise jurisdiction only when authorized to do so by statute.

2.

Under the doctrine of stare decisis, points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised.

3.

This court endeavors to adhere to precedent unless clearly convinced a rule of law established in its earlier cases was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.

1

**4.**

Consistent with *State v. Scherzer*, 254 Kan. 926, 929-30, 869 P.2d 729 (1994), appellate courts have jurisdiction under K.S.A. 60-2101 and K.S.A. 2020 Supp. 22-3504 to hear the State's appeal of an illegal sentence.

**5.**

The legality of a sentence under K.S.A. 2020 Supp. 22-3504 is controlled by the law in effect at the time the sentence was pronounced.

**6.**

In Kansas, the mandate rule is a statutory imperative that requires lower courts to follow the mandates issued by appellate courts.

**7.**

An intervening change in the law can create an exception to the law of the case doctrine—a rule created by common law. However, this exception does not apply to the statutorily derived mandate rule. So, while different panels of the Court of Appeals hearing successive appeals in the same case may, in exceptional circumstances, depart from the law of the case, under Kansas law no exceptional circumstances permit a lower court to circumvent the mandate of a higher court. This holds true even when a change in the law has occurred.

**8.**

The doctrine of constitutional avoidance is a rule of statutory construction. It imposes a duty on the court to construe a statute as constitutionally valid when it is faced with more than one reasonable interpretation. In other words, if a court can genuinely, reasonably, plausibly, or fairly interpret and construe statutory language consistent with legislative intent in a manner that also preserves it from impermissibly encroaching on constitutional limits, the court must do so.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 17, 2020. Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed May 14, 2021. Judgment of the Court of Appeals vacating the sentence and remanding the case to the district court is affirmed. Judgment of the district court is reversed and the case is remanded with directions.

*Thomas R. Stanton*, district attorney, argued the cause, and *Keith E. Schroeder*, former district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

WALL, J.: Sidney W. Clark was originally sentenced in 2005. Years later, he filed a motion to correct an illegal sentence, arguing his prior out-of-state conviction was incorrectly classified as a person offense for criminal history purposes. The district court denied the motion. On Clark's appeal from this ruling, the Court of Appeals reversed based on *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 3, 412 P.3d 984 (2018), and remanded for resentencing with Clark's prior conviction classified as a nonperson offense. *State v. Clark*, No. 119,076, 2019 WL 1746772 (Kan. App. 2019) (unpublished opinion) (*Clark I*).

Before the district court resentenced Clark on remand, a series of legal developments called into question the holding in *Clark I*. Nevertheless, the district court concluded it was bound by the mandate of *Clark I* and resentenced Clark accordingly. This time, the State appealed, arguing Clark's 2019 sentence was illegal and Clark should have been resentenced based on the law in effect in 2005. The Court of Appeals agreed. *State v. Clark*, No. 121,789, 2020 WL 1903820, at *3 (Kan. App. 2020) (unpublished

opinion) (*Clark II*). We granted Clark's petition for review, which challenged the jurisdictional and substantive basis of the ruling in *Clark II*.

This appeal requires us to decide whether Kansas appellate courts have jurisdiction to hear a State's appeal challenging the legality of a sentence. If so, we must also decide whether Clark's sentence is controlled by the law in effect at the time of his original sentence in 2005 or the law in effect at the time of his resentencing in 2019.

Adhering to the doctrine of stare decisis, we follow *State v. Scherzer*, 254 Kan. 926, 929-30, 869 P.2d 729 (1994), which held K.S.A. 60-2101 and K.S.A. 22-3504 vest appellate courts with jurisdiction to hear a State's appeal challenging the legality of a sentence. Further, we hold the legality of Clark's sentence is determined by the law in effect at the time of his sentence in 2005, and neither the mandate rule nor the doctrine of constitutional avoidance alter this conclusion. Accordingly, we affirm the judgment of the Court of Appeals, vacate Clark's sentence, and remand to the district court for resentencing in accordance with this opinion.

FACTS AND PROCEDURAL BACKGROUND

In February 2005, Clark pled guilty to one count of aggravated criminal sodomy, a severity level 2 person felony, based on conduct that occurred in January 2004. At Clark's sentencing in June 2005, the district court determined his criminal history score was a B. This score was based in part on a 2000 Oklahoma conviction for placing bodily fluids on a government employee. The district court classified this conviction as a person felony and sentenced Clark to the aggravated term of 460 months in prison.

In 2017, Clark filed a pro se motion to correct an illegal sentence. He argued his Oklahoma conviction for placing bodily fluids on a government employee was not comparable to any Kansas offense. Clark identified the closest Kansas offense to be

4

battery against a law enforcement officer, which criminalized intentional contact with another person when done in a rude, insulting, or angry manner. But Clark alleged his Oklahoma conviction stemmed from an incident in which he involuntarily spit on arresting officers after they used pepper spray on him and such accidental conduct would not have qualified as rude, insulting, or angry behavior under the Kansas statute. Thus, he claimed his Oklahoma conviction should have been classified as a nonperson felony because no Kansas offense was comparable to the Oklahoma offense of placing bodily fluids on a government employee.

The district court denied Clark's motion. The court explained that for the purposes of determining an offender's criminal history score, the out-of-state offense and the Kansas offense being compared need not be "identical with identical elements." Instead, the offenses need only be comparable. The district court concluded the Oklahoma offense of placing bodily fluids on a government employee was comparable to the Kansas offense of battery against a law enforcement officer. As a result, the district court ruled Clark's Oklahoma conviction was properly classified as a person felony.

The Court of Appeals reversed in *Clark I*. Applying *Wetrich*, the panel held the Oklahoma offense of placing bodily fluids on a government employee is not comparable to the Kansas offense of battery against a law enforcement officer because the elements of the Oklahoma offense are not identical to or narrower than the Kansas offense. *Clark I*, 2019 WL 1746772, at *2-5. Accordingly, the panel vacated Clark's sentence and remanded the case for resentencing with directions to recalculate Clark's criminal history score with his Oklahoma conviction classified as a nonperson felony. 2019 WL 1746772, at *6.

The State did not file a petition for review, and the *Clark I* mandate issued. On remand, a new presentence investigation (PSI) report classified Clark's Oklahoma conviction as a nonperson felony, lowering his criminal history score from B to C.

5

Resentencing was scheduled for July 2019. At that hearing, the district court acknowledged that recent legal developments had cast doubt on whether Clark should be resentenced in accordance with *Wetrich*. The district court continued the hearing so the parties could address the recent caselaw developments. Both parties filed written memoranda addressing the appropriate law for resentencing.

At a hearing on August 16, 2019, the district court found Clark had a criminal history score of C and sentenced him to the aggravated term of 216 months. The State objected, arguing that intervening caselaw since *Clark I* compelled the district court to resentence Clark in accordance with the law in effect in 2005; otherwise, Clark's sentence would be illegal. However, the district court ruled that it lacked authority to depart from the appellate court's mandate to resentence Clark with a criminal history score of C.

The State appealed. And in *Clark II*, the panel held the district court erred because Clark's 2005 sentence was legal when pronounced and subsequent changes in the law could not render it illegal and subject to correction under K.S.A. 2020 Supp. 22-3504. Thus, the panel concluded that Clark's Oklahoma conviction for placing bodily fluids on a government employee should be classified as a person offense. *Clark II*, 2020 WL 1903820, at *3. The panel also rejected Clark's argument that the district court was bound by the mandate in *Clark I*, reasoning that an intervening change in law created an exception to the mandate rule. *Clark II*, 2020 WL 1903820, at *4. The panel vacated Clark's 2019 sentence and remanded the case for resentencing. 2020 WL 1903820, at *5. Clark sought review from this court, which we granted.

ANALYSIS

*Kansas Appellate Courts Have Jurisdiction Over a State's Appeal Challenging the Legality of a Sentence*

Clark argues the State's appeal should be dismissed for lack of jurisdiction. He contends that a party's right to appeal derives solely from statute, and there is no statutory basis for the State to appeal from a district court's ruling on a motion to correct an illegal sentence.

*Standard of Review and Relevant Legal Framework*

"Whether appellate jurisdiction exists is a question of law over which this court has unlimited review. To the extent the court's inquiry requires statutory interpretation, this court also exercises unlimited review. [Citations omitted.]" *State v. Garcia-Garcia*, 309 Kan. 801, 806, 441 P.3d 52 (2019). While Clark raises this issue for the first time in his petition for review, "[a] jurisdictional question may be raised at any time and may also be raised sua sponte by the appellate court." 309 Kan. at 806.

In Kansas, "[a]ppellate jurisdiction is defined by statute; the right to appeal is neither a vested nor a constitutional right." *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010). The limits of appellate jurisdiction are imposed by the Legislature. *State v. Berreth*, 294 Kan. 98, 110, 273 P.3d 752 (2012). Accordingly, "'[an] appellate court has jurisdiction to entertain a State's appeal only if it is taken within time limitations and in the manner prescribed by the applicable statutes.'" *State v. Sales*, 290 Kan. 130, 134, 224 P.3d 546 (2010). Therefore, as a general rule, appellate courts may exercise jurisdiction only when authorized to do so by statute.

Any analysis of an appellate court's jurisdiction begins with K.S.A. 60-2101, which vests appellate courts with jurisdiction to review the judgments of lowers courts. See *State v. LaPointe*, 305 Kan. 938, 942, 390 P.3d 7 (2017); *Flores Rentals v. Flores*, 283 Kan. 476, 481, 153 P.3d 523 (2007). The statute provides that "[t]he supreme court shall have jurisdiction to correct, modify, vacate or reverse any act, order or judgment of a district court or court of appeals in order to assure that any such act, order or judgment is just, legal and free of abuse." K.S.A. 60-2101(b). It also provides that "[i]n any case properly before it, the court of appeals shall have jurisdiction to" do the same. K.S.A. 60-2101(a).

K.S.A. 60-2101 also subjects certain criminal appeals to portions of the Code of Criminal Procedure. Specifically, "[a]ppeals from the district court to the court of appeals in criminal cases" and "[d]irect appeals from the district court to the supreme court in criminal cases shall be as prescribed by K.S.A. 22-3601 and 22-3602, and amendments thereto." K.S.A. 60-2101(a) and (b). However, "any decision of the court of appeals shall be subject to review by the supreme court as provided in subsection (b) of K.S.A. 20-3018." K.S.A. 60-2101(b).

K.S.A. 2020 Supp. 22-3601 defines those criminal cases in which an appeal shall be taken directly to the Supreme Court and designates the Court of Appeals as the proper forum for all other appeals permitted to be taken from a district court's final judgment in a criminal case. And, more relevant here, K.S.A. 2020 Supp. 22-3602 defines the appeal rights of criminal defendants and the State. Under K.S.A. 2020 Supp. 22-3602(a), a criminal defendant may appeal "any judgment against the defendant in the district court," thus creating a "'a nearly unlimited right of review.'" *Berreth*, 294 Kan. at 110 (quoting *State v. Boyd*, 268 Kan. 600, 605, 999 P.2d 265 [2000]).

In contrast, K.S.A. 2020 Supp. 22-3602(b) contemplates four circumstances in which the State may appeal as matter of right in a criminal case:

8

"(b) Appeals to the court of appeals may be taken by the prosecution from cases before a district judge, or a district magistrate judge who is regularly admitted to practice law in Kansas, as a matter of right in the following cases, and no others:

(1) From an order dismissing a complaint, information or indictment;

(2) from an order arresting judgment;

(3) upon a question reserved by the prosecution; or

(4) upon an order granting a new trial in any case involving a class A or B felony or for crimes committed on or after July 1, 1993, in any case involving an off-grid crime."

While subsection (b) specifically lists only four circumstances in which the State has the right to appeal, K.S.A. 2020 Supp. 22-3602(f) acknowledges that "an appeal by the prosecution or the defendant relating to sentences imposed pursuant to . . . the revised Kansas sentencing guidelines act . . . shall be as provided in . . . K.S.A. 21-6820." In turn, K.S.A. 2020 Supp. 21-6820(a) provides that a "departure sentence is subject to appeal by the defendant or the state." Other subsections of this statute authorize the appellate court, in any appeal from a judgment of conviction, to review claims of sentencing error related to the inclusion or exclusion of a prior conviction, the ranking of the crime severity level, or the classification of a prior conviction. K.S.A. 2020 Supp. 21-6820(e)(2) and (3).

Finally, K.S.A. 2020 Supp. 22-3504(a) provides: "The court may correct an illegal sentence at any time while the defendant is serving such sentence." As discussed in greater detail below, this provision has been construed as a jurisdictional statute that authorizes the State to appeal an illegal sentence and the appellate court to review such a challenge.

9

*State's Jurisdictional Bases for Appeal*

In its docketing statement, the State relies on three specific statutes as the jurisdictional bases for its appeal, including: (1) K.S.A. 22-3602(b)(3), addressing appeals from a question reserved; (2) K.S.A. 21-6820(a), addressing appeals from a departure sentence; and (3) "K.S.A. 33-3504(a) [*sic*]" (presumably intended to be K.S.A. 2020 Supp. 22-3504), the illegal sentence statute.

K.S.A. 2020 Supp. 22-3602(b)(3) authorizes the State to take an appeal from a case before a district judge "upon a question reserved by the prosecution." At oral argument, the State abandoned this jurisdictional basis for its appeal because any ruling on a question reserved would not apply to Clark's sentence. See *Berreth*, 294 Kan. at 123 ("[A]n appellate court's answer to a State's question reserved has no effect on the criminal defendant in the underlying case.").

K.S.A. 2020 Supp. 21-6820(a) provides that a "departure sentence is subject to appeal by the defendant or the state." But this provision also fails to provide a valid jurisdictional basis for the State's appeal because Clark did not receive a departure sentence. See K.S.A. 2020 Supp. 21-6803(f) ("'departure' means a sentence which is inconsistent with the presumptive sentence for an offender"). The district court found Clark had a criminal history score of C and sentenced him within the presumptive range based on that criminal history score. If, as the State argues, the district court incorrectly determined Clark's criminal history score, this would not convert the sentence into a departure sentence. Rather, it would render the sentence illegal.

That brings us to the State's third and final proposed statutory basis for jurisdiction, K.S.A. 2020 Supp. 22-3504, the illegal sentence statute. Our precedent establishes that K.S.A. 2020 Supp. 22-3504, together with K.S.A. 60-2101, vests

10

appellate courts with jurisdiction to hear a State's appeal challenging the legality of a sentence. *Scherzer*, 254 Kan. at 929-30.

In *Scherzer*, the district court sentenced the defendant to 90 days' imprisonment but allowed the sentence to be served by house arrest. On appeal, our court issued a show cause order requesting the State to establish the jurisdictional basis for the appeal. The State claimed the district court's sentence failed to comply with statutory requirements, rendering it illegal. *Scherzer* held appellate jurisdiction was proper, reasoning:

> "The State characterizes its appeal as whether the sentence imposed by the district court is illegal. This court has previously accepted an appeal by the State alleging an illegal sentence, albeit without explaining the jurisdictional authority for our review of the sentence imposed. See *State v. Keeley*, 236 Kan. 555, 694 P.2d 422 (1985). We note this court has general statutory jurisdiction to correct, modify, vacate, or reverse any act, order, or judgment of a district court in order to assure that any such act, order, or judgment is just, legal, and free of abuse. K.S.A.1993 Supp. 60-2101(b). The court also has specific statutory jurisdiction to correct an illegal sentence at any time. K.S.A. 22-3504. We have jurisdiction to consider the State's appeal." 254 Kan. at 929-30.

Ordinarily, *Scherzer*'s holding alone would be sufficient to dispose of Clark's challenge and establish our jurisdiction over the State's appeal. However, Clark directs us to a recent Court of Appeals decision, *State v. McCroy*, 57 Kan. App. 2d 643, 649, 458 P.3d 988 (2020), in which the panel held that "K.S.A. 22-3504 does not vest an appellate court with jurisdiction to consider a State's appeal solely on the claim that a sentence is illegal. Instead, for an appellate court to have jurisdiction, the case must originate from one of the limited procedural postures articulated in K.S.A. 22-3602."

In reaching this conclusion, the *McCroy* panel recognized that K.S.A. 2018 Supp. 22-3504 authorizes courts to correct an illegal sentence "at any time." 57 Kan. App. 2d at 648. But the panel construed this language as an exception to the preservation rule,

11

thereby enabling appellate courts to address a sentence's legality for the first time on appeal. The panel explained there is a distinction "between permitting a party to assert a claim for the first time on appeal and this court's jurisdiction to hear the appeal in the first place." 57 Kan. App. 2d at 648. The *McCroy* panel also acknowledged our contrary conclusion in *Scherzer*. However, the panel believed more recent Kansas Supreme Court decisions reflected a departure from *Scherzer*'s "inherent-jurisdictional-authority approach" in favor of a more rigorous statutory analysis. *McCroy*, 57 Kan. App. 2d at 649-50. Thus, the panel concluded it was no longer bound by *Scherzer*'s holding.

While our recent decisions cited by the panel undertake a more extensive statutory analysis than *Scherzer* did, none of those decisions directly bear on the jurisdictional issue raised here. See, e.g., *LaPointe*, 305 Kan. at 955 (dismissing State's appeal from order granting DNA testing because it met none of the criteria in K.S.A. 2015 Supp. 22-3602[b]); *Sales*, 290 Kan. at 141 (dismissing the State's interlocutory appeal for failure to make the necessary showings under K.S.A. 22-3603). Moreover, *Scherzer* remains good law in that it has neither been overturned nor even questioned in our subsequent decisions. Even so, *McCroy* requires us to consider whether *Scherzer* should continue to control the outcome of Clark's jurisdictional challenge under the doctrine of stare decisis.

*Adherence to Stare Decisis Is Warranted Under the Circumstances*

The doctrine of stare decisis provides that "points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised." *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362-63, 361 P.3d 504 (2015). Because adherence to precedent promotes the stability of our legal system, "we do not lightly disapprove of precedent." *State v. Spencer Gifts*, 304 Kan. 755, 766, 374 P.3d 680 (2016).

"While 'stare decisis is not an inexorable command,' this court endeavors to adhere to the principle unless clearly convinced a rule of law established in its earlier cases '"was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent."' [Citations omitted.]" *State v. Hambright*, 310 Kan. 408, 416, 447 P.3d 972 (2019).

We are not "clearly convinced" that *Scherzer* was originally erroneous or is no longer sound because of changing conditions. *McCroy* explains that K.S.A. 60-2101 vests appellate courts with jurisdiction to correct, modify, vacate, or reverse any act, order, or judgment to ensure an outcome that is just, legal, and free of abuse—but only if the case is properly before it. *McCroy*, 57 Kan. App. 2d at 650. The panel reasoned the phrase "any case properly before it" in K.S.A. 60-2101 demonstrates that some other statute must first expressly authorize an aggrieved party to appeal the act, order, or judgment of the lower court before the appellate court can exercise its powers under K.S.A. 60-2101. 57 Kan. App. 2d at 650. *McCroy* further explains that "K.S.A. 60-2101 limits the jurisdiction of both the Kansas Supreme Court and Court of Appeals in criminal cases to those instances permitted in K.S.A. 22-3601 and K.S.A. 22-3602." 57 Kan. App. 2d at 650. In turn, *McCroy* reasons that K.S.A. 2018 Supp. 22-3602(b) enumerates four instances "and no others" in which the State may appeal from a district court ruling in a criminal case, and this list does not include an appeal challenging the legality of a sentence. 57 Kan. App. 2d at 646-47. As such, *McCroy* held that K.S.A. 60-2101 and K.S.A. 2018 Supp. 22-3602(b) foreclose appellate jurisdiction. 57 Kan. App. 2d at 651. *McCroy* concludes that *Scherzer* "took an expansive view of appellate courts' inherent authority" under K.S.A. 60-2101 that fails to account for the panel's statutory construction. *McCroy*, 57 Kan. App. 2d at 650.

*McCroy*'s statutory analysis, however, raises more questions than it resolves. *McCroy* suggests the phrase "any case properly before it" within K.S.A. 60-2101 demonstrates that an aggrieved party must look beyond this statute to establish a right to appeal. 57 Kan. App. 2d at 650. However, the Legislature used the phrase only in K.S.A.

13

60-2101(a), the subsection defining the jurisdiction of the Court of Appeals. It did not include the same phrase in K.S.A. 60-2101(b), which defines the jurisdiction of the Supreme Court. Instead, the Legislature made clear that "any decision of the court of appeals shall be subject to review by the supreme court as provided in subsection (b) of K.S.A. 20-3018." K.S.A. 60-2101(b). Likewise, the phrase is not included in K.S.A 60-2101(d), which vests the district court with jurisdiction over appeals from judgments or final orders of a political or taxing subdivision. Viewing these subsections together, the phrase "in any case properly before it" in K.S.A. 60-2101(a) likely refers to those cases in which the Court of Appeals is the proper jurisdictional forum for the initial appeal, as specified within K.S.A. 60-2101—in other words, those cases in which an appeal is not first taken with the district court under subsection (d) or directly to our court under subsection (b). Under this construction, the phrase "any case properly before it" adds little support for *McCroy*'s holding.

Additionally, *McCroy*'s declaration that "K.S.A. 60-2101 limits the jurisdiction of both the Kansas Supreme Court and Court of Appeals in criminal cases to those instances permitted in K.S.A. 22-3601 and K.S.A. 22-3602," is not a precise recitation of K.S.A. 60-2101. 57 Kan. App. 2d at 650. Instead, subsection (a) of the statute merely provides that "[a]ppeals from the district court to the court of appeals in criminal cases shall be subject to" these provisions. K.S.A. 60-2101(a). In subsection (b), the statute contemplates that only "[d]irect appeals from the district court to the supreme court in criminal cases shall be as prescribed by K.S.A. 22-3601 and 22-3602." So, while direct criminal appeals to either the Court of Appeals or the Supreme Court are subject to K.S.A. 22-3601 and K.S.A. 2020 Supp. 22-3602, the language of K.S.A. 60-2101 does not expressly limit the jurisdiction of the appellate courts to only those instances identified in those statutes. And, while *McCroy* focuses on the language of K.S.A. 2018 Supp. 22-3602(b), which purports to limit the State's right to appeal to four enumerated situations and "no others," it fails to acknowledge that in subsection (f), the statute goes on to authorize the State to appeal sentencing issues as prescribed in K.S.A. 2018 Supp.

14

21-6820. This suggests the Legislature vested appellate courts with jurisdiction over a State's appeal in other statutory provisions.

*McCroy* also appears to overstate *Scherzer*'s "expansive view of appellate courts' inherent authority" under K.S.A. 60-2101. *McCroy*, 57 Kan. App. 2d at 650. *Scherzer* did not rely on K.S.A. 60-2101 alone. It read this statutory provision together and in harmony with the illegal sentence statute, K.S.A. 22-3504. *Scherzer* implicitly acknowledges that these statutes, when read together, authorize an aggrieved party to bring an appeal challenging an illegal sentence and enable appellate courts to exercise their powers of review in such proceedings. In other words, *Scherzer* suggests K.S.A. 22-3504 provides the mechanism through which an appeal challenging the legality of a sentence is properly before the appellate court. See 254 Kan. at 929-30.

*Scherzer*'s construction is defensible, particularly given the language of the statutes in question. We have recognized that K.S.A. 2020 Supp. 22-3504 is a unique statute, in authorizing Kansas courts to correct an illegal sentence "at any time." There is ambiguity as to how far this authorization reaches. See *State v. Swafford*, 306 Kan. 537, 539-40, 394 P.3d 1188 (2017) ("The unique nature of K.S.A. 22-3504, allowing relief from an illegal sentence 'at any time,' creates an ambiguity as to the time limit in which to appeal the result in such a proceeding."). Yet, it is reasonable to infer that an aggrieved party's authority to appeal an illegal sentence is incidental to the court's authority to correct an illegal sentence at any time. In this regard, *Scherzer*'s holding is not so much an expansive view on the inherent authority of appellate courts under K.S.A. 60-2101, as it is an acknowledgment of the uniquely broad grant of authority the Legislature provided under K.S.A. 22-3504.

The panel in *McCroy* also suggests the placement of the illegal sentence statute in Article 35 of the Code of Criminal Procedure, which governs posttrial motions, suggests it is not jurisdictional. *McCroy*, 57 Kan. App. 2d at 648. But "The legislature is not

15

involved in the placement or numbering of statutes, and it is long established that '[t]he placement of a law in a particular location in the General Statutes by the compiler is not persuasive as to the intent of the legislature which enacted the statute.'" *State v. Schuster*, 273 Kan. 989, 994, 46 P.3d 1140 (2002) (quoting *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, Syl. ¶ 3, 610 P.2d 1107 [1980]). In contrast, *Scherzer*'s interpretation of the phrase "at any time" under K.S.A. 2020 Supp. 22-3504 is a more reliable gauge of legislative intent.

And *Scherzer* is not the only decision to interpret K.S.A. 2020 Supp. 22-3504 in this fashion. While only one case directly cites *Scherzer* as a basis for jurisdiction, see *State v. Vanwey*, 262 Kan. 524, 527-28, 941 P.2d 365 (1997), Kansas courts have, in other cases, implicitly recognized their authority to hear the State's appeal of an illegal sentence. See *State v. Webb*, 20 Kan. App. 2d 873, 876, 893 P.2d 255 (1995) (dismissing State's appeal for lack of jurisdiction under K.S.A. 22-3504 because defendant's sentence was legal); see also *State v. Taylor*, 262 Kan. 471, 475, 939 P.2d 904 (1997) (stating in dicta that "[a]lthough K.S.A. 22-3504 provides that the court may correct an illegal sentence at any time, this does not relieve the State of its obligation to file an appeal pursuant to K.S.A. 22-3504 and raise the issue"), *abrogated on other grounds by Berreth*, 294 Kan. 98. Even before *Scherzer*, our court exercised jurisdiction over State appeals challenging the legality of a sentence. See *State v. Ruff*, 252 Kan. 625, 628-29, 847 P.2d 1258 (1993) (dismissing State's appeal of defendant's probation sentence for lack of jurisdiction in part because the sentence was legal); *State v. Keeley*, 236 Kan. 555, 694 P.2d 422 (1985) (addressing State's appeal of sentence on the merits).

Arguably, the rationale in *McCroy* evidences possible ambiguity in K.S.A. 2020 Supp. 22-3504, when read together with K.S.A. 60-2101. But even if the statute's language is arguably ambiguous, the doctrine of stare decisis is still a compelling reason to uphold our precedent. *McCullough v. Wilson*, 308 Kan. 1025, 1035, 426 P.3d 494

(2018) (regardless of whether statutory language is ambiguous, doctrine of stare decisis is compelling reason to affirm lower courts' decision based on precedent).

Moreover, we have acknowledged "[t]he doctrine of stare decisis is particularly compelling in cases where, as here, the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so." *State v. Quested*, 302 Kan. 262, 278, 352 P.3d 553 (2015); see *McCullough*, 308 Kan. at 1036. We note that more than a quarter century (over 27 years) has passed since *Scherzer* was decided, and the Legislature has not amended K.S.A. 2020 Supp. 22-3504 to overrule our interpretation of the statute. In fact, during this time, the Legislature has amended K.S.A. 22-3504 on two separate occasions, and neither amendment responded to nor altered *Scherzer*'s statutory construction. L. 2017, ch. 62, § 9; L. 2019, ch. 59, § 15. The Legislature has also amended K.S.A. 22-3602 several times during this period without affecting the holding in *Scherzer*. L. 1999, ch. 159, § 7; L. 2011, ch. 30, § 133; L. 2014, ch. 71, § 2. "The legislature's continued, long-term acquiescence is a strong indication" the *Scherzer* court gave effect to the intent of the Legislature in holding that K.S.A. 60-2101 and K.S.A. 2020 Supp. 22-3504(a) vest appellate courts with jurisdiction over a State's appeal of an illegal sentence. *Quested*, 302 Kan. at 279.

For these reasons, we are not "clearly convinced" *Scherzer* was originally erroneous or is no longer sound because of changing conditions, and we adhere to its holding under the doctrine of stare decisis. Applying *Scherzer*, we hold the Court of Appeals properly exercised jurisdiction over the State's appeal and our jurisdiction is likewise proper.

*Clark's 2019 Sentence Is Illegal*

In its opening brief, the State argues the district court imposed an illegal sentence at Clark's resentencing in 2019. In response, Clark argues his 2019 sentence should stand

17

because the district court correctly calculated his criminal history score in accordance with *Wetrich*. Before reaching the merits of this argument, it is first helpful to review how sentencing law has evolved over the time period relevant to this appeal.

*Development and Evolution of Relevant Sentencing Law*

Our court has long defined an illegal sentence as a sentence imposed by a court without jurisdiction; a sentence that does not conform to the applicable statutory provision, either in character or punishment; or a sentence that is ambiguous with respect to the time and manner in which it is to be served. See, e.g., *State v. Thomas*, 239 Kan. 457, 460, 720 P.2d 1059 (1986). In 2017, the Legislature codified this definition, but clarified "[*a*] *sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced*." L. 2017, ch. 62, § 9; K.S.A. 2017 Supp. 22-3504(3).

Clark filed his motion to correct an illegal sentence shortly before the 2017 amendments took effect, and the district court denied the motion later that year. In denying the motion, the district court relied on *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015), which held that "[f]or purposes of determining criminal history, the [out-of-state offense and Kansas offense] need only be comparable, not identical" under K.S.A. 2000 Supp. 21-4711(e) (later codified as K.S.A. 21-6811[e]). Under this construction of the statute, the district court concluded that Clark's out-of-state conviction was "comparable" to the Kansas crime of battery of a law enforcement officer and classified the out-of-state conviction as a person offense. Clark appealed.

In 2018, while Clark's appeal was still pending, we issued *Wetrich*, which altered *Vandervort*'s interpretation of K.S.A. 2017 Supp. 21-6811(e). In *Wetrich*, we construed the term "comparable" in K.S.A. 2017 Supp. 21-6811(e) to mean identical or narrower.

18

Thus, for an out-of-state crime to count as a person offense, *Wetrich* held the elements of the out-of-state crime had to be identical to, or narrower than, the elements of the Kansas crime to which it was being referenced. *Wetrich*, 307 Kan. at 562.

In 2019, the Court of Appeals issued *Clark I*, reversing the district court's denial of Clark's motion to correct an illegal sentence. The panel found that, under the identical-or-narrower approach identified in *Wetrich*, the Oklahoma offense for placing bodily fluids on a government employee was not comparable to any Kansas offense, and thus the district court erred in denying Clark's motion. *Clark I*, 2019 WL 1746772, at *5-6. The panel also held that it need not decide whether the 2017 amendments to K.S.A. 22-3504 applied retroactively because *Wetrich* was not a change in the law. The panel vacated the district court's judgment and remanded for resentencing with Clark's Oklahoma conviction classified as a nonperson felony. *Clark I*, 2019 WL 1746772, at *6.

On the same day the Court of Appeals issued *Clark I*, we issued *State v. Murdock*, 309 Kan. 585, 439 P.3d 307 (2019) (*Murdock II*). There, we held the legality of a sentence under K.S.A. 2018 Supp. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. 309 Kan. at 591; see *State v. Dawson*, 310 Kan. 112, 117, 444 P.3d 914 (2019) (same); *State v. Tauer*, 310 Kan. 1, 4, 444 P.3d 936 (2019) (same).

Shortly after we issued *Murdock II*, the Kansas Legislature's 2019 amendments to K.S.A. 22-3504 went into effect. L. 2019, ch. 59, § 15, eff. May 23, 2019. Those amendments defined a "*change in the law*" as "*a statutory change or an opinion by an appellate court of the state of Kansas, unless the opinion is issued while the sentence is pending an appeal from the judgment of conviction*." L. 2019, ch. 59, § 15; K.S.A. 2019 Supp. 22-3504(c)(2). The Legislature deemed the 2019 amendments to be procedural and retroactive. L. 2019, ch. 59, § 15; K.S.A. 2019 Supp. 22-3504(d).

19

While the remand from *Clark I* was still pending before the district court, we also issued *State v. Weber*, 309 Kan. 1203, 1209, 442 P.3d 1044 (2019), which held that *Wetrich* constituted a change in law for the purposes of determining whether a defendant's sentence was illegal under K.S.A. 2018 Supp. 22-3504. See also *State v. Newton*, 309 Kan. 1070, 1073-74, 442 P.3d 489 (2019) (same).

Based on these legal developments, the State claims Clark's 2019 sentence is illegal. Relying on *Tauer* and *Dawson*, the State argues the legality of Clark's sentence must be determined in accordance with the law in effect in 2005. According to the State, *Wetrich* cannot render Clark's 2005 sentence illegal because that decision was a change in law decided in 2018.

*Standard of Review*

Whether a sentence is illegal is a question of law over which we have unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). To decide whether Clark's sentence is illegal, we must determine the proper classification of his prior convictions for the purpose of calculating his criminal history score. The resolution of this issue involves interpretation of the Kansas Sentencing Guidelines Act. Like the legality of a sentence, statutory interpretation is a question of law over which we have unlimited review. *State v. Bryant*, 310 Kan. 920, 921, 453 P.3d 279 (2019).

*The Law in Effect in 2005 Applies in Determining the Legality of Clark's Sentence*

The Court of Appeals, in *Clark II*, found the district court incorrectly calculated Clark's criminal history score at resentencing. In making this determination, the panel applied the law as it existed at the time of Clark's original sentencing in 2005. Clark argues this is error. Because the Court of Appeals vacated Clark's original sentence in

*Clark I*, he claims the district court correctly applied the law as it existed at the time of his resentencing in 2019.

We agree with the Court of Appeals that for purposes of determining the legality of Clark's sentence, the law from the date of his original sentencing should control. After all, this case arose from Clark's 2017 motion to correct his 2005 sentence. Clark's resentencing in 2019 only occurred because *Clark I* held his 2005 sentence was illegal—a holding that became erroneous as a result of decisions we issued prior to Clark's resentencing in 2019. Thus, if Clark's sentence was lawful in 2005, he should have never been resentenced in 2019.

*Murdock II* confirms "[t]he legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced." 309 Kan. at 591. The legality of Clark's sentence became "fixed" when his sentence was pronounced in 2005. Thus, whether his prior Oklahoma conviction is comparable to a Kansas offense should be determined under the law as it existed in 2005. Thus, *Vandervort*'s interpretation of K.S.A. 21-4711(e), rather than *Wetrich*'s "identical or narrower" construction, controls because *Wetrich* had not been decided in 2005. Furthermore, in *State v. Keel*, 302 Kan. 560, 589-90, 357 P.3d 251 (2015), we held the punishment for a crime, as it relates to the classification of prior convictions for criminal history purposes, is set at the time the crime of conviction is committed. *Keel* thus lends further support for applying *Vandervort*, rather than *Wetrich*, in determining whether Clark's sentence is illegal.

> *Clark's Original Sentence Is Legal Under the Law in 2005, and Clark's 2019 Sentence Is Illegal*

When classifying an out-of-state conviction for criminal history purposes, the statute requires the sentencing court follow a two-step process: first, determining whether the prior conviction is a felony or misdemeanor; and then determining whether

21

the crime should be classified as a person or nonperson offense. See K.S.A. 2003 Supp. 21-4711(e). Because neither party disputes the Oklahoma crime of placing bodily fluids on a government employee is a felony, we move directly to the second step.

In determining whether a prior out-of-state conviction should be classified as a person or nonperson offense, courts compare the out-of-state conviction with the comparable Kansas offense in effect at the time defendant committed the current crime of conviction. K.S.A. 2003 Supp. 21-4711(e); *Keel*, 302 Kan. at 590. For purposes of exploring the validity of Clark's 2005 sentence, the Kansas offense need not be identical. Instead, the Kansas offense that is the closest approximation to the out-of-state offense is the comparable offense. *Vandervort*, 276 Kan. at 179. If there is no comparable Kansas offense, then the prior out-of-state conviction must be classified as a nonperson crime. K.S.A. 2003 Supp. 21-4711(e).

Clark's PSI report evidenced his prior conviction for "Placing Bodily Fluids Upon [a] Government Employee" under Okla. Stat. tit. 21, § 650.9 (1999). That statute defines the crime as follows:

> "Every person in the custody of the state, a county or city or a contractor of the state, a county or a city who throws, transfers or in any manner places feces, urine, semen, saliva or blood upon the person of an employee of the state, a county or a city or an employee of a contractor of the state, a county or a city shall, upon conviction thereof, be guilty of a felony." Okla. Stat. tit. 21, § 650.9

According to Clark, his Oklahoma conviction should be compared to battery of a law enforcement officer under K.S.A. 2003 Supp. 21-3413(a)(1). That statute provides:

> "Battery against a law enforcement officer is a battery, as defined in K.S.A. 21-3412 and amendments thereto:

22

> "(a) (1) Committed against a uniformed or properly identified state, county or city law enforcement officer, other than a state correctional officer or employee, a city or county correctional officer or employee, a juvenile correctional facility officer or employee or a juvenile detention facility officer or employee, while such officer is engaged in the performance of such officer's duty."

K.S.A. 2003 Supp. 21-3412(a) defines battery as:

> "(1) Intentionally or recklessly causing bodily harm to another person; or

> "(2) intentionally causing physical contact with another person when done in a rude, insulting or angry manner."

In *Clark II*, the Court of Appeals held that under *Vandervort*, Clark's conviction under Okla. Stat. tit. 21, § 650.9 is comparable to the Kansas crime of battery against a law enforcement officer as defined in K.S.A. 2003 Supp. 21-3413. *Clark II*, 2020 WL 1903820, at *3. We agree. While Okla. Stat. tit. 21, § 650.9 does not contain an intent element, it involves a touching comparable to the Kansas crime of battery. And the Kansas' crime of battery against a law enforcement officer is the closest approximation to the Oklahoma crime of placing bodily fluids on a government employee. Accordingly, we affirm the Court of Appeals' judgment that Clark's 2019 sentence is illegal.

On review, Clark does not challenge the Court of Appeals' comparability analysis under *Vandervort*. Instead, he argues that his 2019 sentence should stand for two other reasons: (1) the mandate rule required the district court to resentence him in accordance with the Court of Appeals' decision in *Clark I*; and (2) the doctrine of constitutional avoidance required the sentencing court to apply the rule identified in *Wetrich*.

*The Mandate Rule Does Not Render the 2019 Sentence Legal*

"In Kansas, . . . the mandate rule is a statutory imperative that requires lower courts follow the mandates issued by appellate courts." *State v. Cheeks*, 313 Kan. __, ___, 482 P.3d 1129, 1134 (2021). This rule arises from two statutory provisions. K.S.A. 60-2106(c) provides, in part, that the mandate and accompanying opinion of an appellate court "shall be controlling in the conduct of any further proceedings necessary in the district court." Also, K.S.A. 20-108 provides that the appellate courts may require the district court to execute the appellate court's judgment "according to the command of the appellate court made therein."

In *Clark I*, the Court of Appeals vacated the district court's judgment and remanded for resentencing with Clark's Oklahoma conviction classified as a nonperson felony. *Clark I*, 2019 WL 1746772, at *6. Thus, under the mandate in *Clark I*, the district court had to resentence Clark with a criminal history of C. But in *Clark II*, the Court of Appeals held that the district court was not bound by *Clark I*'s mandate at resentencing. The *Clark II* panel recognized an exception to the mandate rule when a controlling authority issues an intervening change in the applicable law. *Clark II*, 2020 WL 1903820, at *4 (quoting *State v. Montanez*, No. 114,473, 2017 WL 749031, at *2 [Kan. App. 2017] [unpublished opinion]). Because *Weber* and *Newton* confirmed that *Wetrich* was a change in the law, as contemplated by *Murdock II*, the panel concluded the district court was no longer bound by *Clark I*'s mandate at the time of resentencing in 2019. *Clark II*, 2020 WL 1903820, at *4.

However, the "intervening change in the law exception" the panel relied on in *Clark II*, applies only to the law of the case doctrine—a rule created by common law. We have declined to extend this exception to the statutorily derived mandate rule. So, "[w]hile different panels of the Court of Appeals hearing successive appeals in the same case may, in exceptional circumstances, depart from the law of the case, under Kansas

24

law no exceptional circumstances permit a lower court to circumvent the mandate of a higher court." *Building Erection Svcs. Co. v. Walton Construction Co.*, 312 Kan. 432, Syl. ¶ 1, 475 P.3d 1231 (2020). This holds true "even when a change in the law has occurred." *State v. Kleypas*, 305 Kan. 224, 297, 382 P.3d 373 (2016).

What, then, is a district court to do when an appellate court's mandate effectively requires the district court to impose an illegal sentence? In the situation before us, the district court ideally would have resentenced Clark in accordance with *Clark I*'s mandate, then construed the State's challenge to the legality of that sentence as a motion to correct an illegal sentence. Under K.S.A. 2020 Supp. 22-3504, which authorizes the court to correct an illegal sentence at any time, the district court would then have corrected the sentence based on our intervening decisions in *Murdock II* and *Weber*.

We realize the district court was placed in the unenviable position of having to choose between a Court of Appeals mandate and Kansas Supreme Court precedent with no clear direction on how to proceed. And we do not fault the district court for complying with the mandate. Rather, the district court error is a technical one arising from the failure to subsequently correct the illegal sentence mandated by *Clark I*. Because of this procedural technicality, Clark's 2019 sentence is illegal, and he should be resentenced with his Oklahoma conviction for placing bodily fluids on a government employee classified as a person felony.

We would be remiss not to mention the State could have avoided this complicated analysis and saved the district court from the difficult dilemma it faced at the 2019 resentencing, if it had simply filed a petition for review of *Clark I*. After all, *Murdock II* was released on the same date. Ordinarily, the State's failure to do so would have been fatal. *Building Erection Svcs. Co.*, 312 Kan. 432, Syl. ¶ 2 ("A party who fails to petition the Kansas Supreme Court for review of a Court of Appeals decision is bound by the holding of that decision."). However, the Legislature's broad grant of authority enabling

25

courts to correct an illegal sentence at any time resurrected the State's challenge. K.S.A. 2020 Supp. 22-3504(a). But for this statute, the State's neglect would likely have produced a different outcome.

*The Doctrine of Constitutional Avoidance Does Not Render the 2019 Sentence Legal*

Alternatively, Clark argues the doctrine of constitutional avoidance requires the court to apply *Wetrich*'s identical-or-narrower rule to all sentences imposed after the United States Supreme Court opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The doctrine of constitutional avoidance is a rule of statutory construction. It imposes a duty on the court to "construe a statute as constitutionally valid when it is faced with more than one reasonable interpretation." *Hoesli*, 303 Kan. at 367-68. "In other words, 'if a court can genuinely, reasonably, plausibly, or fairly interpret and construe statutory language consistent with legislative intent in a manner that also preserves it from impermissibly encroaching on constitutional limits, the court must do so.'" *Johnson v. U.S. Food Serv.*, 312 Kan. 597, 602, 478 P.3d 776 (2021).

Clark argues that *Wetrich*'s interpretation of the term "comparable" is the only constitutional interpretation of K.S.A. 2000 Supp. 21-4711(e) (later codified as K.S.A. 21-6811[e]) in light of *Apprendi*. While *Wetrich* did not rely on this doctrine to reach its result, Clark urges us to now hold that *Wetrich*'s outcome is mandated by this doctrine. Such a holding would, in effect, make *Wetrich*'s identical-or-narrower rule operative from 2000, the year *Apprendi* was issued.

We find this argument unpersuasive. In *Vandervort*, we explicitly rejected the statutory construction that Clark claims is compelled by *Apprendi*. See *Vandervort*, 276 Kan. at 179 ("Vandervort confuses the term 'comparable' with the concept of identical

26

elements of the crime."). Notably, *Vandervort* was decided three years after *Apprendi*. Furthermore, before *Wetrich*, no other Kansas case construed the term "comparable" as encompassing the identical-or-narrower requirement. Thus, *Wetrich*, not *Apprendi*, created the new construction of the term "comparable" as used in K.S.A. 2020 Supp. 21-6811(e)(3). And because *Wetrich* was a change in the law, it cannot render Clark's 2005 sentence illegal at the time of pronouncement. *Weber*, 309 Kan. at 1209; see *Murdock II,* 309 Kan. at 591.

Further, while Clark characterizes his argument as one of statutory construction, the essence of his challenge appears to be that the application of the rule in *Vandervort* would render his sentence unconstitutional under *Apprendi*. But the issues in this appeal arise under the illegal sentence statute, K.S.A. 2020 Supp. 22-3504. The statute defines an "illegal sentence" narrowly to exclude claims that the sentence is illegal because it violates a constitutional provision. *State v. Hayes*, 312 Kan. 865, 868, 481 P.3d 1205 (2021). Therefore, to the extent Clark's issue is based on an *Apprendi* challenge under the Sixth Amendment, it necessarily fails. 312 Kan. at 869.

Based on the foregoing analysis, we affirm the judgment of the Court of Appeals, reverse the judgment of the district court, vacate Clark's 2019 sentence, and remand for resentencing consistent with this opinion.

STANDRIDGE, J., not participating.

27